UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. C-11-935 |
| | § | |
| JOSE ANGEL YANEZ, III, *et al*, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is the Defendant, Jose Angel Yanez, III's, "Amended Motion to Suppress Evidence (D.E. 66)." For the reasons set out below, the Motion is GRANTED IN PART AND DENIED IN PART. The motion invokes the exclusionary rule in a Fourth Amendment challenge to the government's actions in obtaining evidence through the use of a "pole camera." The Court held an evidentiary hearing on the motion. Although there was some inconsistency in the evidence presented, the relevant facts are as follows:

**I.   Facts**

In June of 2008, a confidential source gave the Drug Enforcement Administration (DEA) information about a suspected drug dealer. The source gave a first name, an address, and the type of vehicle the person operated. DEA started an investigation to confirm this information. It was quickly confirmed and DEA began drive-by surveillance of the Defendant's residence (4918 Lavaca) in August or November of 2008. At some point, the confidential source told DEA that drugs were being delivered to the residence by a truck with Mexico license plates. The drugs were being carried in a false

compartment in the truck. DEA observed this truck at the Defendant's residence in November or December of 2008 and obtained the license plate number.

On March 5, 2009, through drive-by surveillance, DEA saw the truck with Mexico license plates parked in the front portion of the driveway of the Defendant's house. The driver was seen getting under the truck for a few seconds and then leaving. DEA concluded that he was checking the false compartment. DEA works with Clayton Cohea, a sergeant with narcotics at the Texas Department of Public Safety (DPS). DEA shared the license plate number and vehicle description with Sergeant Cohea.

On March 18, 2009, without a warrant, DEA asked American Electric Power (AEP) to mount a pole camera on the utility pole that was in the utility easement that ran across the Defendant's neighbor's yard. AEP did not enter the Defendant's property when it installed the camera. The camera, capable of panning and zooming, was focused on the Defendant's driveway and garage and was capable of 24/7 surveillance through an account accessed through the internet. It did not, however, have the capability of infrared or any kind of night vision and did not record sound. DEA used the pole camera surveillance from March 18, 2009 until May 24, 2009. At that time, the usage was discontinued, but the camera remained on the pole until January, 2012, because of a dispute over AEP's service charges. The pole camera surveillance allowed DEA to view the Defendant and others accessing hidden compartments in vehicles and producing bundles of what was suspected to be drugs.

The Defendant's home had a wrap-around driveway to the garage, which was located at the back of the house, out of view of the public street and sidewalk. The

backyard was surrounded by a cedar "privacy" fence, which included a gate across the driveway. The Defendant testified that he relied on that fence not only for privacy, but to keep his children safe from wandering into traffic and from a nearby registered sex offender. He also had two bulldogs that needed to be fenced in. His wife did laundry in the garage at all hours and also exercised in the garage—activities that were intended to be private.

On March 24, 2009, independent of DEA's investigation or knowledge, DPS made a traffic stop of the truck bearing the Mexico license plates. It is unclear whether a dog alerted on the truck, but a search was conducted. The trooper contacted Sergeant Cohea and asked for assistance with the search. Because Sergeant Cohea was familiar with the investigation of the Defendant, he made the connection between the truck and the Defendant. Sergeant Cohea contacted DEA Agent Tara Pacheco to inquire about the location of the false compartment. DPS found the compartment, which held a substantial quantity of cocaine. The driver gave a statement regarding the link between the cocaine and the Defendant.

On May 22, 2009, DEA, through the pole camera, observed a black truck partially in the Defendant's garage. DEA observed a male get under the truck and retrieve 15 bundles of what was believed to be cocaine. The Defendant was also observed through the camera and DEA was able to view the Texas license plate number of the truck. The confidential source had previously informed DEA of a black truck with Texas license plates delivering drugs to the residence, but had not provided a license plate number. Agent Pacheco registered the Texas license plate number with a law enforcement service

called EPIC, asking that she be notified any time the license plate number was detected by cameras that were set up on various roadways for that purpose. According to Agent Pacheco, the "registration" of the license plate number was a "silent lookout" that was not shared with any other entity (including other law enforcement). She registered the license plate number with the directive "do not interdict." DEA did not want the truck stopped by other law enforcement agencies because it wanted to plan and control a stop. The truck was observed travelling to Mexico routinely.

On September 16, 2009, again without DEA involvement, DPS stopped the black truck bearing the Texas license plate for speeding. EPIC called Agent Pacheco in the middle of the night to inform her that the truck had been stopped. DPS found over $370,000 in U.S. currency in a compartment. Sergeant Cohea was not called to assist with this search. He learned of the stop and seizure through a general teletype. Agent Pacheco testified that she did not speak to Sergeant Cohea about this traffic stop until the next morning. The driver of the truck was interviewed by DEA in the presence of his attorney about one month after the stop. He admitted delivering narcotics to the Defendant's residence and receiving currency there.

In early 2010, the Defendant moved from 4918 Lavaca in Corpus Christi to 408 Pinehurst in Portland, Texas. Agent Pacheco testified that the information regarding the move came from physical surveillance and not from the pole camera.

DEA compiled all of the information (eyewitness surveillance, pole camera surveillance, confidential source information, DPS stops and driver statements, along with financial information provided by an Internal Revenue Service criminal investigator)

and applied for, and received, search warrants for both the 4918 Lavaca Street and 408 Pinehurst Street residences. Agents and officers from DEA, IRS, and the Corpus Christi Police Department executed the search warrants on September 7, 2011, seizing documents, computers, currency, and other consumer goods.

## II. Law and Analysis

Because DEA had the pole camera installed without a warrant, the Defendant seeks to suppress all evidence derived from the use of the camera. The Defendant must first establish that he had a constitutionally protected reasonable expectation of privacy. *United States v. Cuevas-Sanchez*, 821 F.2d 248, 251 (5th Cir. 1987) (citing *California v. Ciraolo*, 476 U.S. 207, 212-13, 106 S.Ct. 1809, 1812 (1986)). To determine whether the Defendant has a reasonable expectation of privacy, a two-part analysis is performed: "first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *Ciraolo*, 106 S.Ct. at 1811.

The Defendant relies on *Cuevas-Sanchez* which also involved the use of a pole camera. In that case, federal agents installed a camera on a power pole overlooking Cuevas' fence which bordered the backyard. The Court found that Cuevas manifested a subjective expectation of privacy in his backyard because he erected fences around his backyard, screening the activity within from views of casual observers. Additionally, the area monitored by the camera fell within the curtilage of his home, an area protected by traditional fourth amendment analysis. The Court also found that Cuevas' expectation to be free from this type of surveillance is one that society is willing to recognize as

reasonable. The Court likened such surveillance to an "Orwellian state," and held that such surveillance is a "search" under the Fourth Amendment and requires a warrant. *Cuevas-Sanchez*, 821 F.2d at 251.

In this case, the pole camera allowed electronic video surveillance of the Defendant's backyard, including his driveway, garage, and the back of his house. The area was fenced in with a privacy fence and was not subject to the view of the public in the ordinary use of streets, sidewalks, or other public spaces. The Court finds that the holding in *Cuevas-Sanchez* controls the right to privacy issue in this case. The use of a pole camera to view and record the Defendant's activities in his backyard required a warrant. Because it was installed without a warrant, any evidence gained by use of the pole camera is subject to the exclusionary rule.

### III. What Evidence Is Subject to the Exclusionary Rule?

The Defendant suggests that the pole camera tainted virtually all of the evidence obtained in this case. The Defendant challenges the government's use of: (1) the pole camera surveillance videos and photos; (2) the DPS traffic stops and driver statements; and because of the use of that evidence in the probable cause affidavit used to secure the search warrants, (3) the evidence seized at 4918 Lavaca, and (4) the evidence seized at 408 Pinehurst. While the Court readily concludes that the pole camera videos and photographs must be suppressed, the remaining evidence is not so easily discarded.

An illegal search does not necessarily taint all related evidence. "The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Nix v. Williams,* 467 U.S. 431, 443 (1984).

This doctrine balances society's interest in deterring unlawful police conduct with the public interest in giving juries the benefit of all probative evidence of a crime by putting the government in the same, not a worse, position that it would have been in without the illegally acquired evidence. Excluding evidence that has an independent source would put the government in a worse position than it would have been in absent any error or misconduct. *Id.*

The Court finds that evidence obtained from the DPS traffic stops on March 24, 2009 and September 16, 2009 was obtained independently of the pole camera. Regarding the truck with Mexico license plates, DEA knew of its involvement with the Defendant because of drive-by surveillance and not because of the pole camera. The truck with the Texas license plates was stopped by DPS on its own initiative for a traffic violation and not because of any evidence gathered by DEA through the pole camera. DEA was not involved in any manner in the stop and search of this truck.

The Court next considers what evidence must be redacted from the probable cause affidavit used to secure the search warrants. The evidence obtained from the pole camera and references to it must be redacted. Because the pole camera was not in use when the Defendant moved to 408 Pinehurst, there is no reason to suppress that evidence or redact it from the probable cause affidavit. As discussed above, the DPS traffic stop evidence does not have to be redacted. The remaining matters in the affidavit, viewed under the test of the totality of the circumstances, demonstrate a sufficient showing of probable cause. Thus, the evidence seized during the execution of the search warrants is not subject to suppression.

**IV. Conclusion**

The Defendant's Motion to Suppress (D.E. 66) is GRANTED IN PART AND DENIED IN PART. Using the categories of evidence identified by the Defendant:

- Any surveillance photos or video obtained from the pole camera and included in items 1 (surveillance photos and video of the Defendant's back yard, garage, and home at 4918 Lavaca, Corpus Christi) and 2 (surveillance photos and video of persons under vehicles inside the garage and rear driveway at 4918 Lavaca, Corpus Christi, Texas) are EXCLUDED.

- Evidence within the description of items 3 and 4, "Seizures of cash and drugs related to vehicle stops and searches made on vehicles identified at 4918 Lavaca Street in Corpus Christi, Texas" and "Statements made by cooperating individuals who were stopped and arrested for offenses filed by law enforcement agents who made observations of suspected criminal activity in the backyard, garage, and resident [sic] of the Defendant's residence at 4918 Lavaca, Corpus Christi, Texas" are NOT EXCLUDED.

- Evidence within the description of item 5, "Pole camera photographs and video recordings made of suspected drug or money activities at the Defendant's resident [sic] at 4918 Lavaca, Corpus Christi, Texas" are EXCLUDED.

ORDERED this 22nd day of March, 2012.

_____
**NELVA GONZALES RAMOS**
**UNITED STATES DISTRICT JUDGE**